# Exhibit 19 Part 1

ROBERT KLUGMAN
EXHIBIT 1780
01 - 28 - 2021

| | |
|---|---|
| **From:** | Richard Markowitz <rmarkowitz@argremgt.com> |
| **To:** | Peter Wells; Amy Gregory; Rebecca Veillette |
| **CC:** | Robert Klugman; John van Merkensteijn |
| **Sent:** | 2/23/2015 7:48:04 PM |
| **Subject:** | Software License and New Custody Agreement |
| **Attachments:** | Octave Software Licence Agreement.pdf; OPL Standalone Custody Document.pdf |

Attached are the new agreements that each of the Plans entered into.

The first is the software license for the automated trading system.

The second is the new form of the Custody Agreement (which all four custodians are using). The one attached is OPL, but I will forward the same for the other 3.

These were all "signed" electronically, online.

Richard Markowitz
1345 Avenue of the Americas
27th Floor
New York, NY 10105

Office:
(212) 231-3923
Mobile:
(917) 848-5675

RMarkowitz@Argremgt.com

CONFIDENTIAL

JHVM_0004738

# OLD PARK LANE CAPITAL PLC⁺

## TERMS AND CONDITIONS FOR CUSTODY SERVICES

1. **ABOUT US**

1.1 Old Park Lane Capital PLC is a public limited company registered under the laws of England and Wales with registration number 06440879 and whose registered office is at 49 Berkeley Square, London, W1J 5AZ, England, United Kingdom ("**Custodian**").

1.2 The Custodian is authorised and regulated by the Financial Conduct Authority ("**FCA**") under firm reference number 477870. The address of the FCA is 25 the North Colonnade, Canary Wharf, London E14 5HS, England, United Kingdom.

2. **ABOUT THESE TERMS**

2.1 These Terms will govern your relationship with the Custodian. You agree that valid consideration has been provided by the Custodian in permitting you to enter into these Terms. By providing your acceptance of these Terms, including by any electronic means (which may include but not be limited to email confirmation or confirmation provided through an online click confirmation), you confirm that you agree to be bound by these Terms. These Terms shall come into effect on the date that the Custodian opens an Account for you and shall continue in force and effect until terminated in accordance with these Terms ("**Effective Date**").

2.2 Nothing in these Terms will affect, limit or exclude the Custodian's obligations to you under the Act or the FCA Rules which will prevail over these Terms if there is any conflict between them.

2.3 The Custodian may amend these Terms with immediate effect where such amendment is necessary to comply with any legal or regulatory obligation to which the Custodian is subject. In such circumstances, the Custodian will provide you with notification of such amendments as soon as reasonably practicable which may be by email or via publication of the amendments on Gangway.

2.4 Without prejudice to Clause 2.3, these Terms may be amended or varied by the Custodian from time to time. The Custodian may notify you of amendments and variations by email or placing a notice on Gangway together with a link to the amended or varied Terms. The notice will state the date when the amendments or variations will come into effect.

2.5 Notwithstanding any other provision of these Terms, proof that an email was transmitted to the email address provided by you in accordance with Clause 23 (Notices) will be sufficient proof of delivery of a notice pursuant to Clauses 2.3 and 2.4, unless the Custodian has received an email within one (1) hour indicating that the notice has not been delivered.

2.6 Except as provided by Clauses 2.3 and 2.4 above, these Terms may only be varied by the written agreement of both parties.

2.7 Certain capitalised words and phrases have particular meanings when used in these Terms. Those meanings are set out in Schedule 1 (Definitions).

2.8 References to Schedules are to schedules of these Terms and references to Clauses are to clauses of these Terms.

2.9 A reference to any regulation, statute or statutory provision shall be construed as a reference to the same as it may have been, or may from time to time be, amended, modified or re-enacted.

2.10 Any reference to a "day" (including within the phrase "Business Day") shall mean a period of 24 hours running from midnight to midnight.

TERMS AND CONDITIONS FOR CUSTODY SERVICES
JANUARY 2015

1

CONFIDENTIAL

JHVM_0004739

# OLD PARK LANE CAPITAL PLC⁺

2.11  References to times are to GMT, Monday to Friday, except Bank Holidays in England.

2.12  All headings and titles are inserted for convenience only. They are to be ignored in the interpretation of these Terms.

2.13  Words incorporating the masculine gender also include the feminine and neuter genders and words including the singular number also include the plural number and vice versa.

2.14  References to any party hereto or to any other person shall include a reference to any successor or assignee of such person or assignee.

2.15  Where you are acting jointly with one or more persons in relation to your Account, references in these Terms to "you" shall be construed as references to any one of the joint account holders and the Account shall be opened in the joint names of all the joint account holders. Each holder of a joint account shall be jointly and severally liable under these Terms.

3. **APPOINTMENT OF CUSTODIAN**

3.1  From the Effective Date, you appoint the Custodian to act as custodian of the Property and to provide such other services to the Client as set out in these Terms, and the Custodian accepts such appointment pursuant to these Terms.

3.2  You authorise the Custodian to appoint any person to act as sub-custodian to assist with the Property on such terms as the Custodian thinks fit.

3.3  The Custodian will exercise reasonable skill in the selection and monitoring of any sub-custodian in accordance with the FCA Rules.

3.4  If so requested, you will promptly arrange for the signature, execution or production of any documents necessary to carry out the appointment of the Custodian. Where you envisage a delay or failure in delivering such documents as required pursuant to these Terms, you shall notify the Custodian forthwith.

4. **CUSTODIAN'S RELATIONSHIP WITH YOU**

4.1  You will be the Custodian's customer for the purposes of FCA Rules. The Custodian will categorise you in accordance with FCA Rules as an "Eligible Counterparty", "Professional Client" or "Retail Client" as appropriate. Retail clients receive the highest level of protection from the FCA. This includes the segregation of their funds along with access to the Financial Services Compensation Scheme. These protections are listed in Schedule 2 (Client Classification).

4.2  If you believe the classification is incorrect you should inform the Custodian immediately. If you request a change of category there may be a change to the regulatory protection that applies to your account. If you wish to change your category, you should contact the Custodian. The Custodian reserves the right to accept or reject the request. The Custodian may require you to acknowledge in writing that you are aware of the consequences of any loss of protection. You are responsible for keeping the Custodian informed about any changes that could affect your current classification.

4.3  The Custodian will not provide you with advice relating to the investment or other merits of any Transaction. The Custodian is not under any obligation to assess the suitability of any Transaction or monitor the performance of any Transaction.

4.4  Any information provided to you by or on behalf of the Custodian should not and will not be deemed to constitute investment advice. The Custodian does not warrant the accuracy, completeness or timeliness of any information provided to you.

CONFIDENTIAL                                                                                                   JHVM_0004740

# OLD PARK LANE CAPITAL PLC[+]

4.5 You must rely on your own assessment and judgment in making decisions relating to services provided within these Terms and you should seek independent advice where necessary. It is your responsibility to be aware of and to ensure that you understand these Terms and any other factors relevant to a Transaction before entering into it.

4.6 Communications between you and the Custodian will be in English and you will receive documents and other information from the Custodian in English.

5. **APPOINTMENT OF SUB-CUSTODIAN**

The Custodian may arrange for Transactions to be entered into on behalf of you by Jarvis as sub-custodian or any other sub-custodian that the Custodian notifies to you from time to time. Any transactions with Jarvis shall be governed by an agreement between Jarvis and the Custodian ("**Jarvis Agreement**"). The Jarvis Agreement sets out the terms upon which Jarvis will execute transactions for the purposes of trading accounts held with Jarvis, and provide safe custody, settlement, nominee and associated services. Jarvis is authorised and regulated by the Financial Conduct Authority and is a member of the London Stock Exchange. Jarvis's website is at www.jarvisim.co.uk.

6. **CLIENT MONEY**

6.1 The Custodian does not handle Client Money. Any money held as Client Money shall be held by Jarvis as sub-custodian or another sub-custodian (as appointed from time to time) on behalf of you and will be dealt with in accordance with the Client Money Rules, which requires them to hold your money in a separate bank account with an approved bank. Your Client Money will be held by the approved bank with other clients' Client Money in a pooled client account. Unless in settlement of an invoice for fees, all cheques should be made payable to Jarvis or another sub-custodian (as appointed from time to time), in addition, your account number should be written on the back of the cheque. Any stock held by Jarvis on behalf of you will be held in Jarvis Nominees Ltd A/c OPL.

6.2 When you deal in investments overseas, you agree that the Custodian may hold any money of yours at any approved bank or pass your money to an intermediate broker, settlement agent or counterparty outside the UK. In such circumstances, the legal and regulatory regime applying to the bank, broker, agent or counterparty with which your money is held will be different from that of the UK and in the event of a default of the bank, broker, agent or counterparty your money may be treated differently from the position which would apply if the money was in the UK.

6.3 Any balances of Client Money due to you which are unclaimed by you on an account which has not been active for six years will cease to be Client Money and will be retained by the Custodian. The Custodian will take reasonable steps to locate you and give you at least 28 days' notice should you intend to exercise these rights and should the Custodian do so the Custodian undertakes to make good any valid claim that may be subsequently made against any balances the Custodian has retained in this way.

6.4 The Custodian will send you a statement about the funds of the Client and investments at least twice a year or annually, if you have advised the Custodian of this in writing. You may obtain an up to date statement at any time, which will be chargeable.

7. **LENDING AND SET-OFF**

7.1 If requested by you, the Custodian may, in its sole discretion, advance funds to you to facilitate the settlement of any Transaction relating to Property, or settle any Transaction relating to Property on account for you. Any such funds advanced or amounts settled by the Custodian will immediately become due and payable by you to the Custodian on demand.

7.2 Any funds received or held by the Custodian on account for you in connection with any Transaction relating to Cash (including, without limitation, any collateral or margin) and any

TERMS AND CONDITIONS FOR CUSTODY SERVICES
JANUARY 2015

3

CONFIDENTIAL                                                                                       JHVM_0004741

**OLD PARK LANE CAPITAL PLC⁺**

dividend, distribution or other income on any Investments received by the Custodian on account for you shall be set off, immediately and without notice to you, against any liability you may have to the Custodian that has arisen from or as a result of these Terms (including, without limitation, any liability which may have arisen as a result of the Custodian advancing funds to you or settling any Transaction on account for you under Clause 7.1).

8. **TITLE TRANSFER COLLATERAL ARRANGEMENTS**

8.1 For the avoidance of doubt, this Clause 8 shall only apply if you are designated as a "Professional Client" or an "Eligible Counterparty".

8.2 If you are designated as a "Professional Client" or "Eligible Counterparty", you agree as a condition to the continued provision by the Custodian of services to you, that all Cash transferred to the Custodian by you, on behalf of you, for the account of you or which is otherwise held by the Custodian for you from time to time for the purpose of securing or otherwise meeting your obligations to the Custodian whether present or future, actual or contingent or prospective shall be transferred to the Custodian with full ownership so that you no longer have a proprietary claim over it ("**TTC Funds**"). You acknowledge and agree that:

   8.2.1 all rights, title and interest in and to TTC Funds shall vest in the Custodian free and clear of any liens, claims, charges or encumbrances or any other interest of yours or any third person;

   8.2.2 the Custodian will not segregate TTC Funds from the Custodian's own assets and the Custodian may use the TTC Funds in the course of its own business. If the Custodian becomes insolvent, you will rank only as a general creditor;

   8.2.3 no mortgage, charge, lien, pledge, encumbrance or other security interest is intended to be or is created in favour of the Custodian in the TTC Funds;

   8.2.4 TTC Funds shall be treated by the Custodian as collateral in accordance with Chapter 3 of the FCA handbook known as CASS (as amended from time to time) and not as Client Money in accordance with the Client Money Rules in that sourcebook; and

   8.2.5 if the Custodian determines in its discretion that the TTC Funds held are more than is necessary to cover your obligations whether present or future, the Custodian will return an appropriate amount of TTC Funds to you.

8.3 On termination as notified by one party to the other in accordance with Clause 22.1 or Clause 22.1, or upon the Custodian receiving notice from you that you do not wish to receive any further services from the Custodian, the Custodian will, at your request, promptly transfer any TTC Funds, subject first to any set-off pursuant to Clause 7.2 above, to an account designated by you.

8.4 The parties acknowledge that, at any time, if you are designated as a "Professional Client" or "Eligible Counterparty", you may request for Cash to be treated as Client Money. You agree and acknowledge that the acceptance of such request by the Custodian may be conditional on amendments being made to these Terms and any Fees pursuant to Clause 19 (Fees).

9. **MINIMUM ACCOUNT BALANCE**

9.1 On the Effective Date, you are required immediately to transfer an amount equal or greater to €50,000 (fifty thousand Euros) (or equivalent amount in another currency as agreed by the Custodian) of cleared and readily available Cash to your account held by the Custodian, Jarvis or any other sub-custodian ("**Minimum Cash Balance**") as security of your prospective obligations.

CONFIDENTIAL                                                                                                      JHVM_0004742

# OLD PARK LANE CAPITAL PLC[+]

9.2 You agree and acknowledge that it is required and that you must maintain at all times the Minimum Cash Balance hitherto these Terms terminate in accordance with Clause 22 (Termination).

9.3 You agree and acknowledge that from time to time the Custodian may require the amount of the Minimum Cash Balance to be decreased or increased and shall instruct you accordingly.

9.4 For the avoidance of doubt, upon the execution of these Terms and from time to time the Custodian, Jarvis or any other sub-custodian can deduct from the Minimum Cash Balance any fees that may accrue or be invoiced including, but not limited to, the Fees.

9.5 The Custodian shall not be liable to pay interest to you on any credit balance in any account or on any other sum held by the Custodian, Jarvis or any other sub-custodian or account to you for any interest received by the Custodian on such sums.

10. **CUSTODY OF CLIENT INVESTMENTS**

10.1 The Custodian will arrange for Investments to be held by either the Custodian, by Jarvis or by any other sub-custodians appointed by the Custodian.

10.2 Investments may be pooled with the investments of other clients. Individual entitlements to investments may not be identifiable by separate certificates or other physical documents of title or equivalent electronic records and, should the Custodian, Jarvis or any other sub-custodian appointed by it default, any shortfall may be shared pro-rata among all clients of the Custodian whose investments are registered or held in the same name and you may not receive your full entitlement.

10.3 Where any Investments are in uncertificated form, or are otherwise transferable by book entry transfer, the Custodian, Jarvis or any other sub-custodian appointed by it may (where this is market practice) use the services of any securities depository, clearing or settlement system, account controller or other participant in the relevant system, on such terms as it thinks fit, for the purposes of the holding and transfer of such investments (or entitlements thereto).

10.4 You acknowledge that although Investments (requiring registration or recording) will ordinarily be registered or recorded in the name of a nominee, the Custodian, Jarvis or any other sub-custodian appointed by it may from time to time (if the Investments are subject to the applicable law or market practice of a jurisdiction outside the United Kingdom and it is in your best interests to register or record Investments in that way or it is not feasible to do otherwise because of the nature of the applicable law or market practice) register or record Investments in the name of Jarvis or any other sub-custodian or the Custodian itself.

10.5 In addition to any other rights of the Custodian, the Custodian shall have a general lien on all Investments held or administered by it or by any sub-custodian until the full and final satisfaction of all liabilities owed by you to the Custodian pursuant to these Terms (including, without limitation, all liabilities which may have arisen as a result of the Custodian advancing funds to you or settling any transaction for the account of you under Clause 7.1). This lien is in addition, and without prejudice, to the transfer of TTC Funds to the Custodian under Clause 8.

10.6 The Investments may also be subject to a lien in favour of Jarvis or any other sub-custodian, nominee or agent appointed by the Custodian in accordance with these Terms in respect of charges relating to the administration and safekeeping of such assets or of any depositary or settlement system.

11. **SETTLEMENT**

11.1 The Custodian, Jarvis or any other sub-custodian shall on your behalf, assist with any and all clearing and settlement (as required) of any Transaction.

CONFIDENTIAL                                                                                           JHVM_0004743

# OLD PARK LANE CAPITAL PLC⁺

| | | |
|---|---|---|
| 11.2 | | The provision of clearing and settlement services under these Terms shall be subject to the Custodian and/or Jarvis (as applicable) holding or receiving all necessary instructions, documents or funds (as applicable) from you and on such basis as is market practice for the type of investment and market concerned including, but not limited to, "delivery versus payment". |
| 11.3 | | You agree and acknowledge that such Transactions may be given up to the Custodian by third party executing brokers acting on behalf of you and that the Custodian may act solely on the instructions from such third party executing broker. |
| 11.4 | | Notwithstanding any provision contained in any relevant give-up agreement, if the Custodian: |
| | 11.4.1 | declines to accept a Transaction on behalf of you, the Custodian shall notify you of such refusal but is not obliged to give you any reason for such refusal; or |
| | 11.4.2 | accepts a Transaction from a third party executing broker quoting a reference number or mnemonic applicable to you, such Transaction shall be binding and conclusive on you immediately whether or not the details of such Transaction have been confirmed previously to the Custodian by you. |
| 11.5 | | Delivery or payment by the other party to any such transaction will be at your risk, and the Custodian's obligation to account to you for any investment or the proceeds of sale of any investment will be subject to Clause 5 (Lending and Set-Off) and conditional upon receipt by the Custodian, by Jarvis or by any other sub-custodian of the relevant documents or sale proceeds from the other party. |
| 11.6 | | The Custodian, Jarvis or any other sub-custodian appointed by the Custodian may operate a settlement system under which you are debited with the purchase cost or credited with the proceeds of sale on the usual settlement (or subscription) days for the market concerned, conditionally upon settlement being ultimately effected. This may result in either a benefit or a loss to the Custodian, Jarvis or any other sub-custodian or you where clearing and settlement is effected at other times. The Custodian, Jarvis or any other sub-custodian reserves the right to effect the cancellation of any debit or credit so attributed to you if there are unreasonable delays or difficulties in settlement and/or clearing. The Custodian may reverse any erroneous debit or credit made pursuant to this Clause 11 and you shall be responsible for any direct or indirect costs or liabilities resulting from such reversal. |
| 11.7 | | For the avoidance of doubt, the Custodian, Jarvis or any other sub-custodian shall not be responsible or liable: |
| | 11.7.1 | for any losses, costs, expenses or damages arising from any discrepancy between details in instructions from you to such third party executing broker and details of a Transaction submitted to the Custodian for assisting with clearing and settlement; |
| | 11.7.2 | for losses arising out of effecting delivery or payment against an expectation of receipt, save where such delivery or payment was contrary to local market practice as a direct result of any gross negligence or fraud conducted by the Custodian; and |
| | 11.7.3 | for the delay, cancellation, termination and/or failure of any Transaction other than as a direct result of any gross negligence or fraud conducted by the Custodian. |
| 12. | | **INCOME COLLECTION AND CORPORATE ACTIONS** |
| 12.1 | | The Custodian, Jarvis or any other sub-custodian appointed by the Custodian will attend to the collection of all income due on, and the vesting of all other rights and entitlements attaching to, Investments. |
| 12.2 | | Dividends, distributions and any other income on any Investments will be credited to you on the date when the Custodian receives (a) notification of receipt by the sub-custodian or (b) |

TERMS AND CONDITIONS FOR CUSTODY SERVICES
JANUARY 2015

6

receipt of funds following any necessary currency conversion, subject to the provisions of Clause 5 (Lending and Set-Off).

12.3   The Custodian will have no obligation to notify you of any offers, rights issues, investor meetings and other corporate actions of which the Custodian has received notice nor will the Custodian be obliged to exercise any voting rights relating to any Investments held by the Custodian, Jarvis or any other sub-custodian appointed by it.

13.    **PORTAL SERVICES**

13.1   The Custodian shall provide the Portal Services to you from the Effective Date.

13.2   The Portal Services shall continue to be supplied, unless these Terms are terminated in accordance with Clause 22 (Termination).

13.3   The Custodian shall:

   13.3.1   provide each Authorised Trader with a unique log-in ID and password to access the Portal that has been previously approved by you; and

   13.3.2   use reasonable endeavours to provide the Portal Services in all material respects.

13.4   For the avoidance of doubt, Requests shall be deemed to be received by the Custodian when you receive a Request Acknowledgement.

13.5   The Custodian or its agent reserves the right to modify the Portal Services provided to you from time to time.

13.6   You shall:

   13.6.1   provide the Custodian with a list of Authorised Traders prior to the date of these Terms;

   13.6.2   request from the Custodian an ID for each Authorised Trader;

   13.6.3   ensure that each Authorised Trader will only access the Portal using the relevant ID;

   13.6.4   obtain the prior consent of the Custodian with respect to any proposed change to the Authorised Traders and after obtaining such consent undertake to immediately provide to the Custodian any revisions to the list of Authorised Traders;

   13.6.5   safeguard all IDs provided to it by the Custodian;

   13.6.6   promptly notify the Custodian of any unauthorised disclosure or use of any ID;

   13.6.7   co-operate with the Custodian in all matters relating to the Portal Services;

   13.6.8   agree to be bound by any Requests, whether or not authorised by you, that are issued in your name; and

   13.6.9   provide, in a timely manner, such information as the Custodian may reasonably require, and ensure that it is complete and accurate in all material respects.

13.7   In consideration of the payment of the Fees by you, the Custodian will provide or will procure that a service provider provides the following services to you:

   13.7.1   recording Transactions entered into by you within the Custodian's systems to provide you with a record of your trading activity; and

    13.7.2    prepare trade confirmations for Transactions entered into by you and issuing those confirmations to you and, on behalf of you, to your counterparties.

13.8    The provision of the services described in Clause 13.7 shall be subject to you providing the Custodian with all necessary transactions details via the Portal or otherwise in writing to enable the Custodian to perform those services.

13.9    Neither the Custodian nor any service provider appointed by the Custodian shall be responsible or liable for:

    13.9.1    any losses, costs, expenses or damages arising from any discrepancy or error in the details or instructions provided by you; and

    13.9.2    for the delay, cancellation, termination and/or failure of any transaction other than as a direct result of any gross negligence or fraud of the Custodian.

13.10    You further agree and acknowledge that:

    13.10.1    the Custodian will not be responsible for establishing the accuracy of any Requests submitted by or on behalf of you;

    13.10.2    notwithstanding certain security, corruption, transmission error and access availability risks associated with using open networks such as the internet in order to access the Portal, you hereby expressly assume such risks and you shall make your own independent assessment of the adequacy of the internet (as an open network) and security procedures provided by the Custodian; and

    13.10.3    except as expressly stated herein, these Terms do not grant any rights to, or in, patents, copyrights, database rights, trade secrets, trade names, trademarks (whether registered or unregistered), or any other rights or licences in respect of the Portal, Portal Services or any related documentation.

## 14. TRADE REPORTING

14.1    The Custodian may agree to, if requested and notified by you in writing by completing the template notice at Schedule 4 (Trade Reporting Notice), assist you with your reporting obligations required pursuant to EMIR ("**Trade Reporting**").

14.2    You and the Custodian agree and acknowledge that (a) the Custodian may appoint a service provider to assist with the Trade Reporting and (b) Trade Reporting shall be restricted and limited to:

    14.2.1    the Custodian reporting Counterparty Data and Common Data to a trade repository in accordance with the terms and conditions of EMIR;

    14.2.2    derivative contracts entered into by you as counterparty only in accordance with these Terms;

    14.2.3    sending one report to the trade repository containing the relevant required Counterparty Data and Common Data; and

    14.2.4    starting at such time as the reporting obligation for such class of derivative contract comes into force pursuant to EMIR,

and Trade Reporting may include if and when required by applicable rules (and if permitted to be delegated to the Custodian or a service provider by you) contract and collateral valuation data.

CONFIDENTIAL    JHVM_0004746