# Exhibit 24

| | |
|---|---|
| **From:** | Ben-Jacob, Michael |
| **Sent:** | Tuesday, May 08, 2012 3:42 PM |
| **To:** | Jérôme  LHOTE |
| **Cc:** | Matthew Stein; Richard Markowitz; Adam Larosa; John H. van Merkensteijn, III |
| **Subject:** | RE: Draft Belgian opinions - US Pension Pland & US Charity |
| **Attachments:** | Belgian Draft ( Charity).pdf; Belgian Draft (Pension).pdf |

Jerome,

Attached are some comments on the draft opinions.  Let me know when/if you would like to discuss.

Regards.

mbj


\*\*\*
IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with Treasury Department regulations, we inform you that any U.S. federal tax advice contained in this correspondence (including any attachments) is not intended or written to be used, and cannot be used for the purpose of (i) avoiding penalties that may be imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Michael Ben-Jacob
KAYE SCHOLER LLP
425 Park Avenue | New York, New York 10022
T: +1 212.836.8310 | F: +1 212.836.6310
michael.ben-jacob@kayescholer.com | www.kayescholer.com


This message may contain confidential and/or legally privileged information from the law firm Kaye Scholer LLP. If delivered to anyone other than the intended recipient, please notify the sender immediately by return email or by telephone (+1 212.836.8310) and delete the message, along with any attachments, from your computer. Thank you.

**From:** Jérôme LHOTE [mailto:jlhote@argremgt.com]
**Sent:** Monday, May 07, 2012 2:20 PM
**To:** Jérôme LHOTE; Ben-Jacob, Michael
**Cc:** Matthew Stein; Richard Markowitz; Adam Larosa; John H. van Merkensteijn, III
**Subject:** RE: Draft Belgian opinions - US Pension Pland & US Charity

Michael,

Do you have any comments on the attached. I would like to send them back to Belgium filled in as soon as possible. I will integrate the comments you made on the original opinion.

Jerome

**From:** Jérôme LHOTE
**Sent:** Thursday, May 03, 2012 9:36 AM
**To:** 'Ben-Jacob, Michael'
**Cc:** Matthew Stein; Richard Markowitz; Adam Larosa; John H. van Merkensteijn, III
**Subject:** FW: Draft Belgian opinions - US Pension Pland & US Charity

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER                    WH_MDL_00283884

Michael,

Please see the draft opinion from Freshfield Belgium. We still have not reviewed them.
We would appreciate if you could fill in the blanks for Ezra. We are doing the same for the IRA's.

jerome

---

**From:** Emilie.MAES@freshfields.com [mailto:Emilie.MAES@freshfields.com]
**Sent:** Wednesday, May 02, 2012 2:37 PM
**To:** Jérôme LHOTE
**Cc:** Matthew Stein; Richard Markowitz; John H. van Merkensteijn, III; Adam Larosa
**Subject:** Draft Belgian opinions - US Pension Pland & US Charity

Dear Sirs,

I attach a first draft of our two opinions. The information that needs to be completed is market in yellow and the document that we would need in order to finalise these opinions are listed.

Please do not hesitate to contact us should you have any questions or comments on this drafts or with respect to the information to be completed and documents to be provided. We are looking forward to your feedback.

Sincerely,

Axel Haelterman / Emilie Maes

---

**From:** Jerome LHOTE [mailto:]
**Sent:** 30 April 2012 03:11
**To:** HAELTERMAN, Axel (AXH)
**Cc:** Matt Stein; Richard Markowitz; van Merkensteijn; Adam LaRosa
**Subject:** <no subject>

Dear Axel,

Thank you for the very informative phone call on Friday.
As agreed, please find a description of the facts for our clients who are considering to acquire Belgian shares paying dividends. We would need separate opinion for each entity.
The facts are as follows:

**Pension Plans:**
Two of our clients are pension plans. The Pension Plans are individual retirement accounts under Code section 408A of the US Tax Code.
Each Pension Plan is the limited partner to the Partnership and has full economic interest in the Partnership.
The Partnership is a limited partnership (hereafter LP) under Delaware law and will be managed and controlled by a General Partner established in US. The Limited Partnership agreement will be sent to you separately.
LP is considered to be tax transparent or even could be ignored for tax purposes for US tax law purposes
LP will undertake a delta one market neutral trading strategy over Belgian shares, consisting of capturing the basis difference between the price of the shares and the price of the derivatives that can be traded

2

    WH_MDL_00283885

in the market. LP will acquire in a principal capacity listed Belgian shares from third party inter dealer brokers.

LP will hedge its share positions by way of derivative instruments (e.g. futures or other derivatives such as swaps) and these will always be cash settled. The counterparties to the derivatives will not be resident in Belgium.

When LP acquires and holds listed Belgian shares, it will retain all rights to the shares (including voting rights) and none of these rights will be passed through to its derivative counterparty. Further, there will be no restrictions as to what LP can do with the shares (i.e. it can at its own discretion choose to sell, re-hypothecate or lend the shares).

LP will hedge its exposure via a forward contract under which a third party will provide funding to LP and will be exposed to reference transactions that LP may undertake.

We would like confirmation from you that :

- The IRA qualifies as a "pension fund" as defined in article 3.1. k) of the Belgian – American double tax treaty of 27 November 2006;
- The IRA qualifies as a US Resident under article 4.3 a) of the Treaty; and
- The IRA is entitled to the benefit of the dividend withholding tax exemption provided for under article 10.4 b) of the Treaty with respect to dividends made payable by Belgian listed companies, i.e. that the IRA qualifies as beneficial owner of such dividends; and that the dividends should not be considered to be derived from the carrying on of a business by the Pension Plan or through an associated enterprise.


**Charity:**

One of our clients is a US charity. The Charity is a non for profit organization which benefits under US tax regulations from an exemption from tax.

The charity will undertake a delta one market neutral trading strategy over Belgian shares, consisting of capturing the basis difference between the price of the shares and the price of the derivatives that can be traded in the market. It will acquire in a principal capacity listed Belgian shares from third party inter dealer brokers.

It will hedge its share positions by way of derivative instruments (e.g. futures or other derivatives such as swaps) and these will always be cash settled. The counterparties to the derivatives will not be resident in Belgium.

When it acquires and holds listed Belgian shares, it will retain all rights to the shares (including voting rights) and none of these rights will be passed through to its derivative counterparty. Further, there will be no restrictions as to what the charity can do with the shares (i.e. it can at its own discretion choose to sell, re-hypothecate or lend the shares).

The Charity will hedge its exposure via a forward contract under which a third party will provide funding to it and will be exposed to reference transactions that the charity may undertake.

We would like confirmation from you that :

- The Charity qualifies for a domestic exemption of dividend withholding tax under Belgian domestic law; and
- The Charity is entitled to the benefit of the dividend withholding tax exemption with respect to dividends made payable by Belgian listed companies, i.e. that the Charity qualifies as beneficial owner of such dividends; and that the dividends should not be considered to be derived from the carrying on of a business by the Charity

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER    **WH_MDL_00283886**

We look forward to receiving your opinion and are available for any clarification or additional information you may need to render your opinion.

Best regards,

Jerome

This email is confidential and may well also be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply email and then delete this message from your system. Please do not copy it or use it for any purposes, or disclose its contents to any other person: to do so could be a breach of confidence. Thank you for your co-operation. Please contact our IT Helpdesk on +44 (0) 20 7785 2000 or email ITHelpdesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789. It is authorised and regulated by the Solicitors Regulation Authority. In Belgium, it is registered with the RPM/RPR Brussels number 0538 335 152 and professional rules are available at www.barreaudebruxelles.be and www.baliebrussel.be. For regulatory information please refer to www.freshfields.com/support/legalnotice.

A list of the members (and of the non-members who are designated as partners) of Freshfields Bruckhaus Deringer LLP and their qualifications is available for inspection at its registered office, 65 Fleet Street, London EC4Y 1HS. Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer LLP or any of its affiliated firms or entities.

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER                                         WH_MDL_00283887

DRAFT – for discussion purposes only

[addressee]

BRUSSELS
Bastion Tower
Place du Champ de
Mars/Marsveldplein 5
B-1050 Brussels
T +32 2 504 7000
Direct T +32 2 504 7011
F +32 2 504 7200
Direct F +32 2 404 7011
E  Axel.Haelterman@freshfields.com
W  freshfields.com

DOC ID
OUR REF   AXH/EM
YOUR REF
CLIENT MATTER NO.

2 May 2012

Dear Sir

**Hedged investment in Belgian shares**

You have asked us to express our opinion on the following issues



Would [name] (the ***Charity***) qualify for - and be entitled to benefit from the dividend withholding tax exemption contained in article 106, §2 of the Royal Decree implementing the Belgian Income Tax Code (***RD/BITC***) for the dividends received over the Shares. In this respect the questions also arise:

    (a)    Whether the Charity would be considered to constitute the effective owner of the Shares under the Transaction; and

    (b)    Whether the Charity would be considered to constitute the beneficial owner of the dividends over the Shares under the Transaction.

**1.    DESCRIPTION OF THE TRANSACTION**

1.1    The Charity is a non for profit organization which benefits from an exemption from tax under US tax regulations in accordance with [legal basis for exemption?].

1.2    According to the Charity's memorandum of association/bylaws its object consists of [describe object][please provide us with its memorandum of association/bylaws]

1.3    The Charity will undertake a delta one market neutral trading strategy over listed Belgian shares (the Shares), consisting of capturing the basis difference between the

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789. It is authorised and regulated by the Solicitors Regulation Authority. For regulatory information please refer to www.freshfields.com/support/legalnotice.

A list of the members (and of the non-members who are designated as partners) of Freshfields Bruckhaus Deringer LLP and their qualifications is available for inspection at its registered office, 65 Fleet Street, London EC4Y 1HS or at the above address. Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer LLP or any of its affiliated firms or entities.

Abu Dhabi  Amsterdam  Bahrain  Barcelona  Beijing  Berlin  Brussels  Cologne  Dubai  Düsseldorf  Frankfurt am Main  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow  Munich  New York  Paris  Rome  Shanghai  Tokyo  Vienna  Washington

*[handwritten annotation: and will subsequently be entitled to receive the dividend payable on the coupons attached to such Belgian Shares. We have further described the transaction as you dated in our memorandum    2|10    To the best of the charity's knowledge,]*

price of the Shares and the price of the derivatives that can be traded in the market. The Charity will acquire in a principal capacity listed Belgian shares from third party inter dealer brokers.

1.4    It will hedge its share positions by way of derivative instruments (e.g. futures or other derivatives such as swaps) and these will always and entirely be cash settled. The counterparties to the derivatives will not be resident in Belgium. (the *Hedge*)

1.5    When it acquires and holds Shares, it will be entitled to obtain the dividend payments on the Shares and will retain all rights to the Shares (including voting rights) and none of these rights will be passed through to its derivative counterparty.

1.6    Further, there will be no restrictions as to what the Charity can do with the Shares (i.e. it can at its own discretion choose to sell, re-hypothecate or lend the Shares).

1.7    The Charity will hedge its exposure via a cash settled forward contract under which a third party will provide funding to it and will be exposed to reference transactions that the Charity may undertake.(the *Forward*)

*[handwritten annotation: (i) certain amounts payable under the Hedge, and (ii)]*

1.8    The Charity will not be under a contractual obligation to pay over the income received on the shares (i.e. the dividends) to an ultimate beneficiary. The expected dividend on the shares is a component in calculating the initial market value of the shares under the Forward but no adjustment is made to the Forward if the actual dividend received differs from the expected dividend.

1.9    The above under section 1 is referred to as the *Transaction*.

1.10    The Charity will not be under the obligation to sell the shares on termination of the Transaction.

2.    **SUMMARY OF THE OPINION**

2.1    Based upon and subject to the description of the Transaction, the assumptions and the matters set out in section 4, we are of the opinion that:

(a)    The Charity should qualify for and be entitled to benefit from the dividend withholding tax exemption contained in article 106, §2 RD/BITC for the dividends received over the Shares;

(b)    The Charity should be considered to have effective ownership over the Shares under the Transaction;

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER    **WH_MDL_00283889**

3|10

(c)    The Charity should be considered to be the beneficial owner of the dividends on the Shares under the Transaction.

**3.    ASSUMPTIONS**

With your permission and without further enquiry, we have assumed that:

3.1    The description of the relevant facts in the description of the Transaction is accurate and complete.

3.2    Each agreement constitutes a legal, valid and binding obligation of the parties, enforceable against those parties in accordance with its terms.

3.3    Each of the parties to the various agreements regards the terms of each of the agreements they have entered into as accurately reflecting the legal relationship they wish to create between them and that such agreements will form the basis of the entire agreement between the parties (with no other (written or oral) agreement or arrangement behind it expressing any different true intentions).

3.4    The Charity has its registered offices in the US and is resident in the US for tax purposes. It is regulated by US law and entirely managed and controlled in the US;

3.5    The Charity has no permanent establishment in Belgium to which the Transaction or part thereof would need to be allocated.

3.6    The Belgian issuers are Belgian tax resident entities, not acting through a non-Belgian permanent establishment (the *Issuers*).

3.7    The Charity will not be engaged in any commercial or industrial activity other than holding (listed) shares and securities or entering into transactions over (listed) shares and securities without however being enabled to exercise significant influence over the management of the issuing entities.

3.8    The Transaction and all related elements will be disclosed appropriately and correctly in all relevant tax returns.

**4.    DETAILED ANALYSIS OF THE OPINION**

*A) Availability of withholding tax exemption*

4.1    The Charity, which is a separate estate, acknowledged for tax purposes under US tax law, albeit exempt from income taxes because of the nature of its activities, should be

BRU3648870/1+

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER                                                    **WH_MDL_00283890**

4|10

the entity/beneficiary that would need and be entitled to claim the withholding tax exemption contained in article 106, §2 RD/BITC for the dividends on the shares that will be made payable to it.

4.2     Under article 106, §2 RD/BITC a Belgian dividend withholding tax exemption is provided for with respect to dividends:

    (a)     paid to a beneficiary who is identified as being a non-resident in Belgium;

    (b)     which is in its country of residence, exempt from income tax ; and

    (c)     which is not conducting a business or lucrative activities .

4.3     We understand that the Charity has its registered offices in the US. A company with registered offices outside of Belgium, can only be considered to be a resident of Belgium for tax purposes, when it has its primary establishment in Belgium or is effectively managed from Belgium. Therefore, in the absence thereof the Charity should qualify as a non-resident of Belgium.

4.4     We understand from the tax concession issued by the IRS (annex 3) that the company is effectively exempt from tax, since no tax is levied on the Charity's profits, income, gains or appreciations.

4.5     Finally, we understand from the Memorandum of Association/bylaws that:

    (a)     The objects of the Charity consist of [...]; providing middle school and high school parochial education;

    (b)     The income of the company shall be applied solely towards the promotion of its objects and no portion thereof shall be paid or transferred, directly or indirectly, or in any other way to its Members [to be confirmed]; and   correct

    (c)     Upon liquidation of the Charity, none of its assets shall be distributed to its members, but rather will be transferred by the liquidator to some other charitable institution, or to institutions having objects similar to the objects of the company [to be confirmed].   correct

4.6     Therefore, the company should be considered as charitable, comparable to not-for-profit associations under Belgian law and not as a company conducting a business. Note that for not-for profit associations the Belgium Income Tax Code specifically provides that the investment of funds raised in the context of the association's statutory object is not considered to be a lucrative activity (Art. 182 BITC).

BRU3648870/1+



*with respect to to of dividends paid the in respect of the shares received as part of the Transaction.* 5/10

4.7    In light of the above it is our best professional view that the company should qualify for the exemption of dividend withholding tax as provided for under Article 106, §2 RD/BITC.

4.8    The withholding tax exemption is applicable under the condition that the dividend paying entity receives an attestation that certifies that the Charity is (i) the owner or usufruct holder (which is under a civil law "multiple ownership" set-up entitled to the income stream) of the dividend bearing shares, (ii) is a non-resident that is not conducting a business or lucrative activities, directly or indirectly, and which is, in its country of residence, exempt from income tax and (iii) is not held to pay the dividends received to the beneficial owner on the basis of a contractual obligation (article 117, §2 RD/BITC). *It is our view that the charity can correctly provide such certification.*

4.9    Where the Charity fulfils the conditions set out above, it should be able to benefit from the withholding tax exemption contained in article 106, §2 RD/BITC.

4.10   The certificate should generally be provided within 10 days after dividend date to the dividend paying entity that needs to file its withholding tax declaration within 15 days after dividend date. The Belgian dividend paying entity needs to keep this certificate available to the Belgian tax authorities. Given his liability for the withholding tax towards the Belgian tax authorities, it can not be excluded that the paying agent might request other information from the Charity besides this unilateral certificate in order to further ascertain that the Charity does meet the conditions for the internal withholding tax exemption. *(here the Charity)*

4.11   If tax has been withheld – e.g. if the attestation was incomplete or not provided for in due time - at source and the beneficial owner of the income is in practice entitled to an exemption, the beneficial owner must subsequently reclaim all excess tax withheld with the Belgian tax authorities.

4.12   For a reclaim on the basis of a Belgian internal law provision, a tax complaint (*bezwaarschrift / réclamation*) must be introduced with the competent Directorate for Direct Taxes. For a tax complaint procedure the beneficial owner will have the burden of proof that he is in fact entitled to the exemption from Belgian withholding tax, which in practice implies that he will have to substantiate all the elements required in the attestation as described above.

4.13   The handling of the tax complaint and actual repayment of excess withholding tax generally takes about six up to twelve months.

***B) The requirement of effective ownership over the shares***

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00283892

6|10

4.14    In view of the application of the dividend withholding tax exemption contained in article 106, §2 RD/BITC, the Charity needs to provide the attestation certifying its activities and home country income tax exemption, but also certifying its ownership of the shares. As such, it is important that the Charity is clearly in a legal position that enables it to certify such ownership.

4.15    The effective ownership of the Charity over the shares should, as a rule, imply that the acquisition set up (and its financing) as well as the Hedge under the Transaction, are such that the Charity, after having acquired the shares, is legally clearly at liberty to hold on to the shares for an undetermined period of time, in such a manner that it has effective control over what will eventually happen to these shares. This would habitually exclude a financing arrangement that would necessarily lead to an obligation to sell the shares at the end of such "closed end" financing period. Traditionally this would also, and more generally, exclude that at the moment of the acquisition of the shares the Charity enters into an immediate physically settled forward sale.

4.16    The analysis of the cash settled transaction under the Forward and the Hedge is different, since the Charity should in principle remain effective legal owner of the underlying assets (i.e. the Shares and all other assets that it holds) under the terms of these derivative instruments. In case of a cash settlement, one party pays the other the difference between the market price of the relevant underlying asset and the agreed price. However, the underlying assets are not actually delivered. Therefore, entering into the cash settled Hedge and Forward should not lead to the conclusion that the Charity has no effective ownership over the shares and should therefore not exclude the application of the exemption contained in article 106, §2 RD/BITC.

4.17    It is to be noted that in the context of the Belgian budget discussions over the last months, the Belgian government is said to have reached an agreement to tighten the conditions for the exemption from withholding tax for Belgian sourced dividends paid to non-resident non-profit entities, including pension funds.

4.18    It is envisaged that the withholding tax exemption is to be denied if the underlying Belgian equities have been obtained in the context of either a repo or a stock loan. The measure as such aims to address a certain type of abuse which consists of setting up repos and stock loans over dividend date with exemption entitled entities.

4.19    The above measure strengthens our position that in order to qualify for the exemption closed-end set-ups, e.g. immediate or pre-ordained onward sales with physical settlement, are to be avoided. It is our view that the proposed measure will increase

BRU3648870/1+

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00283893

scrutiny over structures of a closed-end nature. Open-ended structures, such as cash settled futures, should not affect the entitlement to the exemption.

### C) Beneficial owner of the dividends

4.20   The withholding tax exemption is disallowed if the beneficiary of the dividend, whilst holding (the ownership of) the shares in its own name, is under a contractual obligation to pay over the dividend income to an ultimate beneficiary. This exclusion essentially aims at the situation where the holder of the shares has issued share certificates to third parties for the account of which he would be holding the shares. Such third parties would traditionally either have financed the share acquisition or have initially transferred the shares to such holder.

4.21   The fact that the holder of the shares would have sought external funding (leverage) for acquiring the shares, should not impact on his ability to claim the withholding tax exemption. Where any such borrowing would take the form of a profit participating loan, care should be taken that such profit participation does not actually lead to an obligation to pay on the dividend to such lender. Taking the dividend coupon into account as one of the elements in order to calculate the profit sharing entitlement of the lender should not impact on the possibility to claim the withholding tax exemption.

4.22   Since the exclusion merely focuses on the obligation to pay over the dividend to a third party, it is important that the Hedge and Forward actually function as a market value guarantee, and do not imply the paying over of the income on the Shares. The Hedge and the Forward should allow the Charity to obtain the dividend on the Shares for its own account, even though, obviously, the market value taken into account in the framework of the Hedge and the Forward will refer to an expected dividend value on the shares.

## 5.    FINAL REMARKS

This letter is confined to matters of Belgian tax law and is not to be read as extending by implication to any matters non-specifically referred to herein. Accordingly, we express no opinion with regard to any system of law (including jurisdictions in which our firm has an office) other than the tax laws of Belgium, all as they stand as at the date hereof and as such laws are currently interpreted in as at the date hereof published case law of the courts of Belgian (*Belgian Tax Law*).

In particular:

BRU3648870/1+

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00283894

8|10

(a)     Belgian legal and fiscal concepts are expressed in English terms and not in their original Dutch or French terms. It should be understood that the concepts concerned may not be identical to the concepts described by the same English terms as they exist in the laws of other jurisdictions. It should be understood that Belgian tax and legal questions would ultimately be determined before the Belgian courts in proceedings conducted in the Dutch or French language and applying Belgian legal and fiscal principles. We can assume no liability for any misunderstanding so caused to the extent that the translation in this letter of such concepts into English does not precisely reflect their meaning in the Dutch or French language.

(b)     The letter may only be relied upon on the condition that any issues of interpretation or liability arising hereunder shall be governed by Belgian law and be brought before a Belgian court.

(c)     This letter speaks as of the date hereof. It supersedes any previous letter or draft letter relating to the transaction and any such previous (draft) letter may not be relied upon. No obligation is assumed to update this letter or to inform any person of any changes of law or other matters coming to our attention or occurring after the date hereof which may affect this opinion in any respect. In particular we do not address the possible effects of any particular draft/proposed changes that may merit attention.

(d)     We have not been responsible for investigating or verifying the accuracy of the statements of fact (or statements of foreign law), or for verifying that no material facts have been omitted from the transaction description.

(e)     The letter is not to be read as extending by implication to any other matter in connection with the transaction or otherwise. The letter should not be relied upon for any purpose unconnected with the Transaction.

(f)     This opinion is prepared with professional diligence and care. However, it is not a guarantee of outcome or result. It should be understood that the expression in this letter of an opinion as to any matter does not provide assurance that a court or other tribunal, or any relevant (tax) authority, will not form a different conclusion.

(g)     This memorandum is solely for the benefit of [the Charity]. It relates only to the specific tax aspects under the Treaty and Belgian tax law of the proposed transaction which you have asked us to consider, and does not address any other tax, legal or regulatory aspects, or the position in other jurisdictions.

is this applicable here?

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER                                      WH_MDL_00283895

This letter may be relied upon by you only and it may not be relied upon by, transmitted to or filed with any person, firm, company or institution without our prior written consent, save that this memorandum may be disclosed on a non-reliance basis without our prior written consent to […].

Yours faithfully

Freshfields Bruckhaus Deringer LLP

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

10|10

## 6.    ANNEXES

6.1    Bylaws

6.2    Forward agreement

6.3    Form  issued by the IRS for the Charity; and

6.4    Certificate article 106, §2 *juncto* 117, §2 RD/BITC.

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00283897

DRAFT – for discussion purposes only

[addressee]

BRUSSELS
Bastion Tower
Place du Champ de
Mars/Marsveldplein 5
B-1050 Brussels
T +32 2 504 7000
Direct T +32 2 504 7011
F +32 2 504 7200
Direct F +32 2 404 7011
E Axel.Haelterman@freshfields.com
W freshfields.com

DOC ID /
OUR REF AXH/EM
YOUR REF
CLIENT MATTER NO.

*over the shares described in the Transaction (as defined below)*

2 May 2012

Dear Sir

**Hedged investment in Belgian shares**

You have asked us to express our opinion on the following issues

(a) Would [name] (the ***Pension Plan***) qualify as a "pension fund" as defined in article 3.1. k) of the Belgian – American double tax treaty of 27 November 2006 (hereafter the ***Treaty***);

(b) Would the Pension Plan qualify as a US Resident under article 4.3 a) of the Treaty; and

(c) Would the Pension Plan be entitled to the benefit of the dividend withholding tax exemption provided for under article 10.4 b) of the Treaty with respect to dividends made payable by Belgian listed companies (the ***Belgian Issuer(s)***) to the limited partnership [name] established as a Delaware Limited Partnership (the ***Partnership***) to which the Pension Plan is a Limited Partner. In this respect, the following questions arise:

(i) Whether the Pension Plan would qualify as beneficial owner of such dividends; and

(ii) Whether the dividends should not be considered to be derived from the carrying on of a business by the Pension Plan or through an associated enterprise.

Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789. It is authorised and regulated by the Solicitors Regulation Authority. For regulatory information please refer to www.freshfields.com/support/legalnotice.

A list of the members (and of the non-members who are designated as partners) of Freshfields Bruckhaus Deringer LLP and their qualifications is available for inspection at its registered office, 65 Fleet Street, London EC4Y 1HS or at the above address. Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer LLP or any of its affiliated firms or entities.

Abu Dhabi  Amsterdam  Bahrain  Barcelona  Beijing  Berlin  Brussels  Cologne  Dubai  Düsseldorf  Frankfurt am Main  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  London  Madrid  Milan  Moscow  Munich  New York  Paris  Rome  Shanghai  Tokyo  Vienna  Washington

*[handwritten, top right: We have further described the transaction to you in our memorandum dated ___ . 2|12]*

## 1.    DESCRIPTION OF THE TRANSACTION

1.1    The Pension Plan is an individual retirement account under Code section 408A of the US Tax Code [type to be verified: trust or roth IRA]. The bylaws of the Pension Plan provide that the only activities carried out by the Pension Plan are [...]. (see bylaws in annex 1).

1.2    The Pension Plan is the limited partner to the Partnership and has full economic interest in the Partnership.

1.3    The Partnership is a limited partnership under Delaware law and will be managed and controlled by a General Partner established in the US. The Limited Partnership agreement is attached in annex 2 (the ***Limited Partnership Agreement***).

1.4    The Partnership is considered to be tax transparent for US law purposes. It is subject to Subchapter K and hence treated as tax transparent.

*[handwritten, left margin: (the "Shares")]*

1.5    The Partnership will undertake a delta one market neutral trading strategy over Belgian shares, consisting of capturing the basis difference between the price of the shares and the price of the derivatives that can be traded in the market. The Partnership will acquire in a principal capacity listed Belgian shares from third party inter dealer brokers and will subsequently be entitled to receive the dividend payable on the coupons attached to such Belgian shares.

*[handwritten, left margin: To the best of the Partnership's knowledge,]*

1.6    The Partnership will hedge its share positions by way of derivative instruments (e.g. futures or other derivatives such as swaps) and these will always and exclusively be cash settled. The counterparties to the derivatives will not be resident in Belgium (the ***Hedge***).

1.7    When the Partnership acquires and holds ~~listed Belgian~~ *the* shares, it will retain all rights to the shares (including voting rights) and none of these rights will be passed through to its derivative counterparty. Further, there will be no restrictions as to what the Partnership can do with the shares (i.e. it can at its own discretion choose to sell, re-hypothecate or lend the shares).

1.8    The Partnership will hedge its exposure via a cash settled forward contract under which a third party will provide funding to the Partnership and will be exposed to reference transactions that the Partnership may undertake (see annex 3, the ***Forward***).

*[handwritten, bottom: it will be entitled to obtain the dividend payments on the shares and]*

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER                    WH_MDL_00283899

*1.9 The Partnership will not be under a Contractual obligation to pay over the income received on the Shares (i.e, the dividends) to an ultimate beneficiary. The expected dividend on the Shares is a component in calculating (i) certain amounts payable under the Hedge, and (ii) the initial fair market value of the Shares under the Forward, but no adjustment is made to the Forward if the actual dividend received differs from the expected dividend.*

*1.10* Following [the Limited Partnership Agreement / the General Partner's resolutions dated [...] it has explicitly been decided that) the activities that are carried out by the Partnership under the Limited Partnership Agreement solely consist of the investment, in the name of the Partnership but for the account of the Limited Partner, of the partnership assets and the profits and losses of the Partnership that are economically allocated to the Limited Partner in accordance with its interest in the partnership. (see the Limited Partnership Agreement in annex 2 // the General Partners' Resolutions in annex 4).[*we would only need such General Partners' Resolution if the Limited Partnership agreement is insufficiently clear with respect to the Partnership's activities which may not consist of actively carrying on a business*]

*1.11: The Partnership will not be under the obligation to sell the Shares on termination of the Transaction.*

*1.12* The above under section 1 is referred to as the **Transaction**.

## 2.    SUMMARY OF THE OPINION

2.1    Based upon and subject to the description of the Transaction, the assumptions and the matters set out in section 4, we are of the opinion that:

(a)    The Pension Plan should qualify as a "pension fund" as defined in article 3.1. k) of the Treaty;

(b)    The Pension Plan should qualify as a US resident in application of article 4.3 a) of the Treaty;

(c)    The Pension Plan should be entitled to benefit from the withholding tax exemption provided for under article 10.4 b) of the Treaty for dividends made payable by Belgian Issuers to the Partnership. *In respect of the Shares* The Pension Plan should in this respect qualify as the beneficial owner of these dividends and the dividends should not be considered to be derived from the carrying on of a business by the Pension Plan or through the Partnership.

## 3.    ASSUMPTIONS

With your permission and without further enquiry, we have assumed that:

3.1    The description of the relevant facts in the description of the Transaction is accurate and complete.

3.2    Each agreement constitutes a legal, valid and binding obligation of the parties, enforceable against those parties in accordance with its terms.

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

4|12

3.3    Each of the parties to the various agreements regards the terms of each of the
agreements they have entered into as accurately reflecting the legal relationship they
wish to create between them and that such agreements will form the basis of the
entire agreement between the parties (with no other (written or oral) agreement or
arrangement behind it expressing any different true intentions).

3.4    The Pension Plan is entirely managed and controlled in the United States so that the
issue whether the Pension Plan does qualify as a US resident is dependent on our
legal analysis of article 4.3 a) of the Treaty, without the need for us to verify the
factual elements relating to the tax residency of the Pension Plan;

3.5    Nor the Partnership, nor the Pension Plan, nor the General Partner has a permanent
establishment in Belgium to which the Transaction or part thereof would need to be
allocated.

3.6    The Belgian Issuers are Belgian tax resident entities both for the application of
Belgian domestic tax law and for the application of any tax treaty between Belgium
and any other jurisdiction, not acting through a non-Belgian permanent
establishment.

3.7    The Transaction and all related elements will be disclosed appropriately and correctly
in all relevant tax returns.

**4.    DETAILED ANALYSIS OF THE OPINION**

*A) Application of article 3.1. k) of the Treaty - "Pension Fund"*

4.1    As the Partnership is treated as tax transparent for treaty purposes, the Pension Plan
should need to be able to invoke the application of the Treaty between Belgium and
the US. Prior to the question whether the Pension Plan, which is established in the
US, is a resident as described in article 4 of the Treaty that is entitled to Treaty
benefits, the question arises whether the Pension Plan falls under the definition given
to the notion "pension fund" under the Treaty.

4.2    The Treaty defines under article 3.1. k) that:

*"the term "pension fund" means any person established in a Contracting State that
is:*

*i) operated principally:*

*A) to administer or provide pension or retirement benefits; or*

BRU3648870/1+

5|12

> *B) to earn income for the benefit of one or more arrangements described in A); and*

> *ii) is either:*

>> *A) in the case of Belgium (...); or*

>> *B) in the case of the United States, exempt from tax in the United States with respect to the activities described in clause i) of this subparagraph."*

4.3    The Technical explanation to article 3.1. k) of the Treaty[1] (the **Technical Explanation**), includes a list of persons that qualify as pension funds under US domestic law and that are therefore protected by the Treaty. This list encompasses a trust that is an individual retirement account under Code section 408A or a Roth individual retirement account under Code section 408A [to be verified which type].

*this is not quite what the 6166 says.*

4.4    Hence, as the Pension Plan qualifies under Code section 408A, as confirmed in form 6166 issued by the IRS (see annex 5), the Pension Plan should qualify as a "pension fund" as defined in article 3.1. k) of the Treaty.

**B) Application of article 4.3. a) of the Treaty - US Resident**

4.5    Only residents as described in article 4 of the Treaty are entitled to claim any Treaty benefits. Paragraph 3 of article 4 explicitly provides that pension funds, even if they are tax-exempt entities, are regarded as residents of a contracting state entitled to Treaty benefits. *This is confirmed by form 6166.*

4.6    The Pension Plan, which qualifies as "pension fund" as defined in article 3.1. k) of the Treaty, should thus be able to qualify as a resident under the Treaty.

**C) Application of article 1.6 of the Treaty – Tax transparency**

4.7    Article 1.6 of the Treaty provides that:

> *"An item of income, profit or gain derived through an entity that is fiscally transparent under the laws of either Contracting State shall be considered to be derived by a resident of a State to the extent that the item is treated for purposes of*

---

[1] Full title: *"Department of the treasury – Technical explanation of the convention between the government of the United States of America and the government of the Kingdom of Belgium for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income signed at Brussels on November 27, 2006".*

BRU3648870/1+

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00283902

6|12

*the taxation law of such Contracting State as the income, profit or gain of a resident."*

4.8    Since for US tax purposes, the Partnership is subject to Subchapter K and treated as tax transparent, taxation takes place at the level of the partners, i.e. the Pension Plan. Hence the income derived by the Pension Plan through the Partnership should be considered to be derived by the Pension Plan directly.

**D) Application of article 10.4 (b) of the Treaty - Dividend exemption**

4.9    Article 10.4 b) of the Treaty provides that:

*"4. Notwithstanding the provisions of paragraph 2, where the company paying the dividends is a resident of Belgium, such dividends shall not be taxed in Belgium if the beneficial owner of the dividends is:*

*a) (...)*

*b) a pension fund that is a resident of the United States, provided that such dividends are not derived from the carrying on of a business by the pension fund or through an associated enterprise."*

4.10    This exemption should apply to the dividends made payable by the Belgian Issuer to the Partnership to which the Pension Plan is a limited partner.

(a)    Indeed, the Pension Plan should qualify as a pension fund under article 3.1. k) of the Treaty, which should qualify as a resident of the US for Treaty purposes (see 4.1 – 4.6);

(b)    The income derived through the Partnership should be considered to be derived by the Pension Plan (see 4.7 – 4.8)

(c)    Moreover, the Pension Plan, as limited partner to the Partnership, is economically entitled to the dividends that will be made payable by the Belgian Issuers to the Partnership and which are benefits derived from the investments made by the Partnership. Therefore, the Pension Plan should be considered to be the beneficial owner of these dividends.

The term "beneficial owner" is not defined in the Treaty, and is, therefore, defined as under the internal law of the country imposing tax (i.e. the country of source).

BRU3648870/1+

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00283903

(i)    The Technical Explanation specifically addresses the exemption for Pension Funds as follows:

> "*This rule is necessary because pension funds normally do not pay tax (either through a general exemption or because reserves for future pension liabilities effectively offset all of the fund's income), and therefore cannot benefit from a foreign tax credit. Moreover, distributions from a pension fund generally do not maintain the character of the underlying income, so the beneficiaries of the pension are not in a position to claim a foreign tax credit when they finally receive the pension, in many cases years after the withholding tax has been paid. Accordingly, in the absence of this rule, the dividends would almost certainly be subject to unrelieved double taxation.*"

The above consideration, that the beneficial ownership should reside with the pension fund to avoid unrelieveable double taxation, clearly meets the observations regarding the notion "beneficial ownership" contained in the OECD Model Commentary:

> "*the term 'beneficial owner' is not used in a narrow technical sense, rather, it should be understood in its context and in light of the object and purpose of the Convention, including avoiding double taxation and the prevention of fiscal evasion and avoidance.*"

Taking into consideration the above and the fact that the Belgian tax authorities have consistently adhered to the above OECD guideline, the Pension Plan should be considered the beneficial owner of the dividends. The fact that the Pension Plan distributes its income to pension beneficiaries, should thus not impact this analysis.

(ii)    The internal law notion of a beneficial ownership implies that the beneficial owner should not be under a contractual obligation to pay over the dividend income to an ultimate beneficiary. This interpretation given essentially aims at the situation where the holder of the shares has issued share certificates to third parties for the account of which he would be holding the shares. Such third parties would traditionally either have financed the share acquisition or have initially transferred the shares to such holder.

The fact that the holder of the shares would have sought external funding (leverage) for acquiring the shares, should not impact on his

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

ability to claim the withholding tax exemption. Where any such borrowing would take the form of a profit participating loan, care should be taken that such profit participation does not actually lead to an obligation to pay on the dividend to such lender. Taking the dividend coupon into account as one of the elements in order to calculate the profit sharing entitlement of the lender should not impact on the possibility to claim the withholding tax exemption.

Since the exclusion merely focuses on the obligation to pay over the dividend to a third party, it is important that the Hedge and the Forward are actually functioning as a market value guarantee, and do not imply the paying over of the income on the Shares.

As the Hedge and the Forward will allow the Partnership to obtain the dividend - to which the Pension Plan is economically entitled - on the Shares for its own account, even though, obviously, the market value taken into account in the framework of the Hedge and the Forward will refer to an expected dividend value on the Shares, nor the Hedge, nor the Forward should, in our view, disallow the Pension Plan's beneficial entitlement to the dividends.

(d)     Finally, the dividends should not be considered to be derived from the carrying on of a business by the Pension Plan or through an associated enterprise.

In article 3.1. d) it is stated that the term *"enterprise"* applies to *"the carrying on of any business"*. The Treaty also specifies in article 3.1. e) that a *"business"* *"includes the performance of professional services and of other activities of an independent character"*. As the term *"business"* is not defined in the Treaty, this term should be construed in accordance with Belgian domestic law (see also administrative comments n°7/105).

The Belgian tax authorities have generally construed the term *"enterprise"* as referring to any economic entity that can generate profit from industrial, commercial or agricultural activity within the meaning of article 24 Belgian Income Tax Code (**BITC**).

Furthermore, article 182 BITC specifically provides the for non-profit entities, such as pension plans, the investment of funds collected in accordance with its statutory purpose does not qualify as transactions of a profit generating nature.

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

As the Pension Plan will be merely investing its funds through the Partnership and since neither the Pension Plan, nor the Partnership, will engage in any kind of industrial, commercial or agricultural activity these dividends should not be considered to be derived from the carrying on of a business.

4.11   For claiming the exemption at source certificate Div.276-aut should be provided - generally within 10 days after dividend date - to the dividend paying entity that needs to file its withholding tax declaration within 15 days after dividend date. The Belgian dividend paying entity needs to keep this certificate available to the Belgian tax authorities.

4.12   A reclaim of the Belgian withholding tax levied at source upon making payable of the dividends on the shares issued by the Belgian Issuer should be done within three years starting from the 1st of January of the year following the year in which the dividends are made payable by the Belgian Issuer. Form 276 Div. – aut. (see annex 6) should to that end be filed with the Central Taxation Office Brussels-foreign countries (*Bureau de Taxation de Bruxelles-Etranger / Centraal Taxatiekantoor Brussel-Buitenland*) within this term. The handling of the tax reclaim and actual repayment of excess withholding tax generally takes about six months.

## 5.   FINAL REMARKS

This letter is confined to matters of Belgian tax law and is not to be read as extending by implication to any matters non-specifically referred to herein. Accordingly, we express no opinion with regard to any system of law (including jurisdictions in which our firm has an office) other than the tax laws of Belgium, all as they stand as at the date hereof and as such laws are currently interpreted in as at the date hereof published case law of the courts of Belgian (*Belgian Tax Law*).

In particular:

(a)   Belgian legal and fiscal concepts are expressed in English terms and not in their original Dutch or French terms. It should be understood that the concepts concerned may not be identical to the concepts described by the same English terms as they exist in the laws of other jurisdictions. It should be understood that Belgian tax and legal questions would ultimately be determined before the Belgian courts in proceedings conducted in the Dutch or French language and applying Belgian legal and fiscal principles. We can assume no liability for any misunderstanding so caused to the extent that the translation in this letter of such concepts into English does not precisely reflect their meaning in the Dutch or French language.

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

10|12

(b)     The letter may only be relied upon on the condition that any issues of interpretation or liability arising hereunder shall be governed by Belgian law and be brought before a Belgian court.

(c)     This letter speaks as of the date hereof. It supersedes any previous letter or draft letter relating to the transaction and any such previous (draft) letter may not be relied upon. No obligation is assumed to update this letter or to inform any person of any changes of law or other matters coming to our attention or occurring after the date hereof which may affect this opinion in any respect. In particular we do not address the possible effects of any particular draft/proposed changes that may merit attention.

(d)     We have not been responsible for investigating or verifying the accuracy of the statements of fact (or statements of foreign law), or for verifying that no material facts have been omitted from the transaction description.

(e)     The letter is not to be read as extending by implication to any other matter in connection with the transaction or otherwise. The letter should not be relied upon for any purpose unconnected with the Transaction.

(f)     This opinion is prepared with professional diligence and care. However, it is not a guarantee of outcome or result. It should be understood that the expression in this letter of an opinion as to any matter does not provide assurance that a court or other tribunal, or any relevant (tax) authority, will not form a different conclusion.

(g)     This memorandum is solely for the benefit of [Pension Plan] and [the Partnership]. It relates only to the specific tax aspects under the Treaty and Belgian tax law of the proposed transaction which you have asked us to consider, and does not address any other tax, legal or regulatory aspects, or the position in other jurisdictions. This letter may be relied upon by you only and it may not be relied upon by, transmitted to or filed with any person, firm, company or institution without our prior written consent, save that this memorandum may be disclosed on a non-reliance basis without our prior written consent to […].

Yours faithfully

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER                                    WH_MDL_00283907

11|12

Freshfields Bruckhaus Deringer LLP

BRU3648870/1+

CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

12|12

6.    **ANNEXES**

6.1    Bylaws of the Pension Plan;

6.2    Limited Partnership Agreement;

6.3    Forward agreement

6.4    General Partners' Resolutions dated [..] ;

6.5    Form 6166 issued by the IRS for the Pension Plan; and

6.6    Form 276 Div. – aut..

BRU3648870/1+
CONFIDENTIAL / PRIVILEGED - SUBJECT TO 502(d) ORDER

WH_MDL_00283909